# JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| | Case No.: SACV 14-01788-CJC(DFMx) |
| SENECA INSURANCE COMPANY, INC., | |
| Plaintiff, | |
| v. | ORDER GRANTING AMCO INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT |
| AMCO INSURANCE COMPANY and DOES 1through 100, inclusive, | |
| Defendants. | |

## I.  INTRODUCTION

In exchange for paying out the full assessed value for fire damage on two insured properties, Plaintiff Seneca Insurance Company, Inc. entered into an agreement with the insureds to obtain their rights against defendant AMCO Insurance Company, an insurer

that had previously insured the properties before purportedly cancelling its coverage. Operating on the theory that AMCO's cancellation of its policy was ineffective under California law, Seneca brought several claims against AMCO to recover the value of the payment Seneca had already made to the insureds.  After a prior order from this Court on AMCO's motion to dismiss, (Dkt. 24), the only remaining claim is for breach of contract: Seneca alleges that AMCO breached its contract with the insureds by not paying out on the insureds' claims for fire damage, and that as the insureds' assignee, Seneca is entitled to collect the resulting damages award.  For the following reasons, the Court GRANTS AMCO's motion for summary judgment with respect to the contract claim.

## II.  BACKGROUND

AMCO issued a Premier Businessowners Policy, number ACP BPH 7805581163, to Group V San Bernardino, LP and Nijjar Realty, Inc. (the "Insureds") to insure a number of properties, including the property located at 5310 Olivewood Avenue, Riverside, California (the "Riverside Property").  (Dkt. 27-7, AMCO Compendium of Exhibits ("COE") Ex. 1.)  That policy (the "AMCO Group V Policy") had effective dates of April 1, 2012 to April 1, 2013.  (*Id.*)  AMCO also issued a Premier Businessowners Policy, number ACP BPH 7805580996, to Baldev S. & Daljit K. Kler and Nijjar, to insure a number of properties, including the property located at 3154 Banning Avenue, Lynwood, California (the "Lynwood Property").  (COE Ex. 2.)  That policy (the "Nijjar Policy") had the same effective dates of April 1, 2012 to April 1, 2013.  (*Id.*)  Together, the policies will be referred to as the "AMCO Policies."  In May 2012, AMCO determined that the AMCO Policies did not meet AMCO's underwriting guidelines and decided to cancel them.  (Dkt. 27-4, Lutkemuller Decl. ¶¶ 5-7.)  AMCO sent the insureds correspondence indicating that the policies would be cancelled effective August 17, 2012. (Dkt. 27-2, AMCO's Statement of Uncontroverted Facts ("SUF") ## 34-35.)

Nijjar and Group V obtained a replacement policy from Seneca (the "Seneca Policy"), with effective dates of August 21, 2012 to April 1, 2013, policy number CMP 4601972, which insured both the Riverside Property and the Lynwood Property.  (SUF## 45, 48.)  On October 23, 2012, the Riverside Property sustained fire damage.  (SUF# 49.) Derek Brewart ("Agent Brewart") of Hamilton Brewart Insurance Agency ("HBIA"), Group V and Nijjar's insurance broker for many years, sent notice of that fire loss to Seneca per the terms of the Seneca Policy.  (SUF# 47, 51.)  Seneca acknowledged receipt of the notice and assigned its claims handling to an independent adjuster.  (SUF# 52-54.) AMCO was not given notice of the October 23, 2012 fire until Seneca filed this suit well over a year later on August 15, 2014.  (SUF# 56.)[1]  Soon after Agent Brewart notified Seneca of the fire loss to the Riverside Property on October 23, 2012, Nijjar and Group V changed insurance agents, leaving HBIA and appointing Sullivan, Curtis & Monroe ("SCM") in HBIA's place.  (SUF# 58.)

On November 3, 2012, the Lynwood Property sustained fire damage as well. (SUF# 57.)  Nijjar and Group V gave notice to SCM of the fire so that SCM could place the insurance carrier on notice, as was their practice whenever a loss occurred at their properties.  (SUF# 59-60.)  SCM then gave notice of the Lynwood fire to AMCO on November 12, 2012 (SUF# 71-72.)  SCM was then forwarded an email from Patty Ebeling, a former HBIA employee, indicating that she had received a call from AMCO relating to a recently submitted claim, that AMCO's policy had been cancelled on August 17, 2012, and that SCM needed to notify the proper carrier of the loss.  (COE Ex. 94, DeLeon Dep. at 40:17-41:14, 42:2-42:14, and Ex. 39 thereto.)  SCM then determined that Seneca insured the Lynwood Property and on November 14, 2012, SCM sent notice of

---

[1] Seneca does not dispute the truth of this fact, but does make a legal argument that AMCO must be estopped from asserting it.  (Dkt. 28-1, Seneca's Statement of Genuine Disputes # 56.)  As discussed below, the Court rejects this argument.

the fire loss at the Lynwood Property to Seneca, which was received and acknowledged by Seneca.  (SUF# 83-85.)

On November 14, 2012, SCM also sent an email to AMCO stating that SCM had submitted the claim relating to the fire loss at the Lynwood Property to AMCO in error, that SCM had determined that AMCO did not insure the Lynwood Property on the date of the loss, and that AMCO could close its file relating to the claim for damages to the Lynwood Property resulting from the November 3, 2012.  (SUF# 77; COE Ex. 94, DeLeon Dep. at Ex. 39 thereto.)  An AMCO claims representative, David Block, then sent a letter dated November 14, 2012 both to SCM and the Insureds, stating that AMCO was "informed by your current agent  Christine DeLeon [of SCM] that this claim was opened in error."  (SUF # 79.)  The letter mentions that a condition in the Insureds' policy, under the title "Legal Action Against Us," provides that

No one may bring a legal action against us under this insurance unless:

    a.  There has been full compliance with all the terms of this insurance; and

    b.  The action is brought within 1 year after the date on which the direct physical loss or damage occurred.

(COE. Ex. 46.)  Mr. Block's letter further advises that "[d]uring our investigation of your claim, this time limit on filing suit was tolled.  Our investigation concluded on November 14, 2012.  You therefore have until November 10, 2013 to bring a legal action against us arising out of this claim."  (SUF# 79.)  AMCO received no response to this correspondence, (SUF# 80-81), and there is no indication in the parties' briefing that AMCO heard anything more at all about the claim until Seneca filed suit over a year and a half later.

Seneca has raised evidentiary objections to AMCO's evidence relating to the cancellation of the insurance policies, (Dkt. 28-1, Seneca's Statement of Genuine Disputes ("SGD") # 38), and further asserts that AMCO's alleged cancellation was improper (Pl.'s Opp'n Br. at 4-5). For the purpose of its summary judgment motion only, AMCO has agreed to assume that the cancellation of the AMCO Policies was ineffective, and that the AMCO Policies were therefore in effect at the time of the fire losses. (Defs.' Reply Br. 2-3.)

Between June 21, 2013 and July 8, 2013, after Nijjar and Group V submitted three signed and notarized Sworn Statements in Proof of Loss concerning the losses at the Riverside Property and the Lynwood Property, Seneca issues checks covering the full amount of the alleged losses. (SUF## 102-07.) Though Seneca paid out the full value of the claims to the Insureds, Seneca's First Amended Complaint ("FAC") indicates that "Seneca and the Insureds agree that the Insureds (through their broker) did not accurately and truthfully disclose material information in the application and its express representations to Seneca in order to obtain the Seneca Policy, which conduct entitled Seneca to rescind the Seneca Policy. Seneca and the Insureds therefore also agreed that Seneca subsequently canceled the Seneca Policy retroactive to its effective date of August 21, 2012." (SUF# 123.)

Seneca's investigation of the fires and payment of the dollar amount allegedly lost in the fires—despite the alleged retroactive cancellation of the Seneca Policy—was pursuant to a "Memorandum of Understanding" ("MOU") signed by the Insureds on January 8, 2013, which stated that Seneca would "proceed to adjust the above-referenced claims under the terms and conditions of the [Seneca Policy], without regard to issues as to whether the policy was obtained properly and/or whether the policy should be reformed/rescinded or canceled" in exchange for Group V and Nijjar later assigning their

rights against HBIA and "Allied Insurance Company"[2] to Seneca.  (SUF# 95-96; COE Ex. 58.)  The MOU further stated that the "general idea is to make sure the insured receives policy benefits for the two pending claims, while allowing Seneca the opportunity to seek reimbursement or contribution from potentially-responsible third parties."  (COE Ex. 58.)  The parties dispute whether the payment from Seneca to Group V and Nijjar was in consideration for the assignment of their rights (as Seneca argues) or to settle their insurance claims (as AMCO argues).  This dispute, however, is peripheral to the basis upon which the Court grants AMCO's motion.

Based on the assignment of rights pertaining to the fires at the Lynwood Property and the Riverside Property from the Insureds to Seneca, Seneca brought suit against AMCO on August 15, 2014.  Seneca's FAC, filed on July 10, 2015, alleges causes of action for breach of contract as the assignee of the Insureds, and equitable contribution. (SUF# 144.)  The FAC contends that AMCO's cancellation of the AMCO Policies was ineffective and void, that AMCO was made aware of the claims made by the Insureds for the losses resulting from the fires at the Riverside Property and the Lynwood Property, and that AMCO refused to pay for those losses on the grounds that the AMCO Policies were cancelled.  (SUF# 145.)  Seneca asserts that because the AMCO Policies were allegedly improperly cancelled, they were in full force and effect at the time of the losses and AMCO breached the AMCO Policies in refusing to pay for the losses.

This Court issued an order (Dkt. 26) dismissing the equitable contribution cause of action in Seneca's FAC and ordered that AMCO's motion to dismiss the breach of contract cause of action in the FAC be converted into a motion for summary judgment. The parties have now briefed the issue under the summary judgment standard.

---

[2] Seneca and the Insureds' mistaken belief that they were insured by Allied rather than AMCO is discussed below in Section IV.A, which addresses standing.

### III.  LEGAL STANDARD

Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 325.  A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" when its resolution might affect the outcome of the suit under the governing law, and is determined by looking to the substantive law.  *Id.*

Where, as here, the nonmovant will have the burden of proof on an issue at trial, the moving party may discharge its burden of production by either (1) negating an essential element of the opposing party's claim or defense, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-60 (1970), or (2) showing that there is an absence of evidence to support the nonmoving party's case, *Celotex Corp.*, 477 U.S. at 325.  Once this burden is met, the party resisting the motion must set forth, by affidavit, or as otherwise provided under Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.  A party opposing summary judgment must support its assertion that a material fact is genuinely disputed by (i) citing to materials in the record, (ii) showing the moving party's materials are inadequate to establish an absence of genuine dispute, or (iii) showing that the moving party lacks admissible evidence to support its factual position. Fed. R. Civ. P. 56(c)(1)(A)-(B).  The opposing party may also object to the material cited by the movant on the basis that it "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party, and draw all justifiable inferences in its favor.  *Id.*; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).

## IV.  ANALYSIS

### A.  AMCO's Assertion that Seneca Lacks Standing

As a threshold matter, AMCO asserts that Seneca lacks standing to bring suit against it because the Assignment of Claims and Rights between the Insureds and Seneca, which assigns the rights at issue in this case, only concerns the assignment of claims against "Allied Insurance Company" as opposed to AMCO, and Allied and AMCO are separate entities.  (Defs.' Opp'n Br. at 9-10; SUF# 113; COE Ex. 81.)

California law provides that "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civil Code § 1636.  "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." Cal. Civil Code § 1643. In addition, "[a] contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." Cal. Civil Code § 1647.

Here, the Assignment of Claims and Rights between Seneca and the Insureds refers to the Lynwood and Riverside properties, states that the Insureds obtained insurance policies covering those two properties from Allied, that Allied later purportedly cancelled

of those policies, and that Allied denied insurance coverage because of the purported cancellation.  (COE Ex. 81.)  Furthermore, the words "Allied Insurance" were placed prominently in large and bold typeface on several pages of AMCO insurance documents sent to Group V and Nijjar.  (*See, e.g.,* COE Exs. 1 at p. 9, 2 at p. 260, 3, 4, 5, 11, 12, 15, 22, and 23.)

Given the content of the assignment agreement and the presence of an "Allied Insurance" logo on multiple documents AMCO sent to Group V and Nijjar, there can be no plausible doubt that the parties to the assignment contract intended to assign to Seneca the Insureds' rights against the insurer of the Lynwood Property and the Riverside Property, who they collectively erroneously assumed was Allied, though in fact it was AMCO.  AMCO has essentially adopted this understanding of the contract in its own filings: its notice of removal states that AMCO was "erroneously sued as ALLIED INSURANCE COMPANY," (Dkt. 1 at 1), and the first page of AMCO's moving papers for the instant motion repeat that phrase, (Dkt. 27).

The evidence indicates that the parties to the assignment agreement had the mutual intent of assigning rights vis-à-vis the insurer who issued the AMCO Policies, which was in fact AMCO, not Allied.  Accordingly, the rights assigned were against AMCO, and Seneca has standing to litigate this case here.

## B.  AMCO's Statute of Limitations Defense

AMCO asserts that Seneca's claims for breach of contract relating to the AMCO Policies must fail because the instant case was filed well after the one-year statute of limitations had run for both the fire at the Riverside Property and the fire at the Lynwood Property.  The AMCO Policies state that a legal action under the policies cannot be brought unless "[t]here has been full compliance with all of the terms of this insurance;

and the action is brought within 1 year after the date on which the direct physical loss or damage occurred." (SUF## 3, 6.) This policy language is pursuant to the California Standard Form Fire Insurance Policy found in California Insurance Code § 2071, which includes the provision that, "no suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with and unless commenced within 12 months net after inception of the loss." This "shortened limitations period has long been recognized as valid in California." *Doheny Park Terrace Homeowners Ass'n, Inc. v. Truck Ins. Exchange*, 132 Cal. App. 4th 1076, 1085 (2005) (citing *Prudential-LMI Com. Ins. v. Superior Ct.*, 51 Cal. 3d 674, 683 (1990).

Under § 2071, "[t]he insured's suit on the policy will be deemed timely if it is filed within one year after 'inception of the loss,' defined as that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered." *Prudential-LMI*, 51 Cal. 3d at 686-87. The running of the contractual limitations period is, however, tolled while the claim is being considered by the insurance carrier. *Doheny Park*, 132 Cal. App. 4th at 1087. Thus, "if an insured waits 11 months after discovering the loss to make his claim, he will have only 1 month to file his action after the claim is denied before it is time-barred under section 2071." *Prudential-LMI*, 51 Cal. 3d at 691-92.

Limitations periods are "to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Id.* Prejudice to the insurer need not be shown in order to enforce a

statute of limitations, as "[n]othing more than the mere passage of time is required for the statute of limitations to bar an action at law." *State Farm Ins. & Casualty Co. v. Superior Ct.*, 210 Cal. App. 3d 604, 612 (1989).

Under a straightforward application of the text of the statute and the contract terms, Seneca is time-barred from bringing this case because it failed to bring suit within a year after the date the physical loss occurred, excluding the periods where tolling was in effect. Seneca filed this action on August 15, 2014, one year, 9 months, and 15 days after the November 3, 2012 fire loss at the Lynwood Property. There, SCM notified AMCO of the loss on November 12, 2012, and then withdrew the notice of loss on November 14, 2012. AMCO confirmed the withdrawal that same day, indicated that its investigation concluded that day and it would be closing its file, and expressly stated that "You therefore have until November 10, 2013 to bring a legal action against us arising out of this claim. Any claims you make or paperwork received after this date may be rejected based on this limitation." (COE Ex. 46.) Under the statute of limitations, the tolling period appears to be three days—November 12, 13, and 14—making the end of the statute of limitations period November 6, 2013. But in either case, suit was filed over nine months after the statute of limitations period ended.

The same is true for the October 23, 2012 fire at the Riverside Property. This action was filed on August 15, 2014, 1 year, 9 months, and 25 days after the October 23, 2012 fire loss. And because that claim was never reported to AMCO and AMCO never considered the claim before facing this lawsuit, there was no tolling period.

Seneca raises several arguments to support its position that the statute of limitations found in the AMCO Policies and California Insurance Code § 2071 have no effect here, but they are not convincing. Seneca first argues that AMCO committed an anticipatory breach of the contract that was effective on the cancellation date, August 17,

2012, and that because this breach occurred before there was property loss, California's four-year statute of limitations for contract claims applies, as opposed to § 2071's one-year statute of limitations for property loss claims.  (Pl.'s Opp'n Br. at 11.)  Seneca's FAC, however, indicates that the breach of contract claim Seneca pleads pertains only to AMCO's failure to pay for the covered losses at the two properties at issue, not a theory that AMCO committed an anticipatory breach when it cancelled the contract: "Covered losses to the Riverside Property and the Lynwood Property occurred during the policy period on the AMCO Policies, and AMCO was made aware of those covered losses in a timely manner.  However, without legal justification or excuse, AMCO failed and refused to indemnify the Insureds for said losses, this breaching its contract with the Insureds."  FAC ¶ 20.  The FAC is silent as to breach at the time of cancellation.  This is a claim based on failure to cover loss based on the property damage, indicating that § 2071 is the source of the pertinent statute of limitations period.

Seneca next asserts that AMCO must be estopped from asserting the statute of limitations defense, and cites the California Supreme Court's holding in *Vu v. Prudential Property & Casualty Ins. Co.* that "[t]o create an equitable estoppel, it is enough if the party has been induced to *refrain* from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss." 26 Cal. 4th 1142, 1152-53 (2001) (emphasis in original).  In *Vu*—which, as here, addressed possible equitable estoppel of an insurance contract—the California Supreme Court addressed a certified question from the Ninth Circuit about whether its decision in *Neff v. New York Life Ins. Co.*, 30 Cal. 2d 165 (1947) remains good law.

In *Neff*, the insured became disabled by tuberculosis and submitted a claim to his insurer in 1926, but coverage was denied a year later based on the insurer's assertion that it did not appear that the insured was entitled to disability benefits.  *Vu*, 26 Cal. 4th at 1149.  The insured died in 1937 and in 1943 his son discovered his correspondence with

the insurance company and sued, alleging that the insurer knew the insured was disabled within the meaning of the policy but fraudulently represented that the insured was not entitled to policy benefits.  *Id.*  By the time *Neff* was before the California Supreme Court, it was already well-settled that "an unconditional denial of liability by the insurer after the insured has incurred loss and made claim under the policy gives rise to an immediate right of action."  *Id.* (quoting *Bollinger v. National Fire Ins. Co.*, 25 Cal 2d at 404).  The issue in *Neff* was whether the insurer's allegedly false communication that the insured was "'not entitled to any benefits under [the] policy'" was an "unconditional denial of liability that would start the running of the statute of limitations" or was instead "a misrepresentation of fact on which the insured reasonably relied" that could "furnish a basis for estopping the insurer from raising the statute of limitations defense."  *Id.*  The *Neff* Court decided that the insurer's communication was the former—a denial of liability as opposed to a misrepresentation of fact, and that therefore it did not estop the insurer from claiming a statute of limitations defense.  *Id.* at 1149-50.  The *Neff* Court rejected the plaintiff's argument that "as estoppel could be grounded on the theory that the insurer concealed the 'fact' of the insured's right to recovery," *Id.* at 1150, noting that "such a rule 'would mean that no insurer could deny liability without indefinitely suspending the running of the statute of limitations ,'" *Id.* (quoting *Neff*, 30 Cal. 2d at 172-73).

The *Vu* Court noted that subsequent cases have applied *Neff*'s central holding, and elaborated on two in particular.  The first, *Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136 (1990), concerned a claim for damage to a house caused by third-party negligence, which the insurer denied on the ground that the policy did not cover such damage.  *Vu*, 26 Cal. 4th at 1151.  Seven years later, the plaintiff discovered that the policy did cover such damage and brought suit, alleging that the defendant must be estopped from asserting a statute of limitations defense because it had "fraudulently concealed that the policy provided coverage for their damage."  *Id.*  The *Love* Court applied *Neff* and affirmed a judgment for the insurer, explaining that "[i]t is undisputed that the Loves knew the

operative facts (i.e., their home was damaged and the causes of damage included third party negligence) . . . [T]hey admit being told unequivocally in 1981 their claim was denied for lack of coverage.  [The insurer] neither 'misrepresented' nor 'concealed' any facts (as opposed to pertinent law or legal theories) . . . ."  *Id.* (citing *Love*, 221 Cal. App. 3d at 1145).  *Love* distinguishes estoppel cases cited by the plaintiff, explaining that in those other cases, "the defendants' nondisclosure and/or misrepresentations effectively concealed the *facts* upon which the cause of action rested, *not the legal theories* supporting the complainants' claims."  *Id.* (citing *Love*, 221 Cal. App. 3d at 1145-46, n.6).

The second case the *Vu* Court focuses on was the Ninth Circuit decision in *Matsumoto v. Republic Ins. Co.*, 792 F.2d 869 (1986), which applied California law to find for the insurer because "the insurer's denial of the Matsumotos' claims was, at most, an incorrect interpretation of the terms of [the] contract.  We are therefore bound by [*Neff*] wherein the California Supreme Court held that an insurer's disclaimer, even if 'made through fraud or mistake,' could not toll the statute of limitations."  *Vu*, 26 Cal. 4th at 1152 (quoting *Masumoto*, 792 F.2d at 872).  *Vu*  further notes that "the Ninth Circuit observed that the Matsumotos did not argue factual concealment."  *Id.*

Having reviewed the application of *Neff* in *Love* and *Matsumoto* and noted that numerous other cases had applied *Neff* without suggesting that its reasoning was outmoded, the *Vu* Court opted to "reaffirm our holding in *Neff* . . . that a denial of coverage, even if phrased as a 'representation' that the policy does not cover the insured's claim, or words to that effect, offers no grounds for estopping the insurer from raising a statute of limitations defense.  But as we have seen, *Neff* and many other cases applying *Neff* were careful to distinguish such a representation form a misrepresentation of *fact*.  The latter, they noted, could lead to an estoppel."  *Vu*, 26 Cal. 4th at 1152.  In *Vu* itself, the California Supreme Court concluded that estoppel was appropriate because the

insurance company's misrepresentation was a question of fact.  After an earthquake damaged the insured's home, the insurer inspected the property and concluded that the total cost of repairs was $3,962.50, well under the policy's deductible of $30,000.  *Id.*  Based on this assessment, the insurer advised the insured not to file a claim.  *Id.*  Twenty months later, an appraiser hired by the insured determined that the damage to the home actually far exceeded the $30,000 deductible.  *Id.* at 1147.

Here, both parties have invoke *Vu* and at oral argument they sharply contested whether the alleged misrepresentation by AMCO concerning the cancellation of the policy was a legal representation that the policy did not cover the Insureds' claim or a factual representation that could result in estoppel of the statute of limitations defense. This Court concludes—based on *Vu* and the cases it discusses—that the facts here best fit into the former category.  The record clearly indicates that AMCO took steps to cancel the AMCO Policies.  AMCO informed the Insureds on several occasions that it intended to cancel the policies and there is no dispute that on August 1, 2012, AMCO sent a Notices of Cancellation to HBIA and the Insureds asserting that the policy covering the Lynwood Property and the policy covering the Riverside Property would both be cancelled on August 17, 2012. (SUF## 34-35.)  And as discussed above, AMCO's November 14, 2012 letter asserts that the policy covering the Lynwood Property in particular was cancelled.  Seneca has not raised any factual issues about whether these documents were sent.  It has also not raised any other issues about what steps AMCO did or didn't take to effect cancellation of the AMCO Policies.  Rather, Seneca's argument is that the steps AMCO indisputably took were insufficient to effect cancellation of the policies under the provisions of the California Insurance Code.  (*See, e.g.,* SGD## 34-35 ("it is disputed that Exhibit 20 is a proper notice of cancellation of insurance within the meaning of the Cal. Insurance Code"); FAC ¶ 8 ("Seneca hereby asserts that said purported August 17, 2012 cancellation was ineffective and void because it did not comply with California law).)  These allegations are far more akin to the complete

denials of coverage asserted in *Neff*, *Love*, and *Matsumoto*—legal positions— than they are to the factual errors about the extent of earthquake damage that were at the core of *Vu* itself.  Accordingly, *Vu* provides no basis to estop AMCO from asserting its statute of limitations defense in this case.

Because the Court concludes that AMCO's statute of limitations defense is an effective bar to Seneca's contract claim, there is no need to consider AMCO's additional arguments, that the Insureds' failure to perform conditions precedent to coverage and that Seneca's payment to the Insureds was payment for covered claims rather than payment for an assignment.

**V.  CONCLUSION**

Accordingly, AMCO's motion for summary judgment is GRANTED.

DATED:     December 7, 2015

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE